**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EAGLES, LTD.,<br><br>        Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>        Defendants. | Case No. 21-cv-03858 |

**COMPLAINT**

Plaintiff Eagles, Ltd. ("Eagles" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel and other merchandise, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Plaintiff is a corporation organized and existing under the laws of California with its principal place of business in Encino, California.

5.      The Eagles are a famous American rock band formed in Los Angeles in 1971.  The Eagles are one of the world's best-selling bands, having sold more than 200 million records worldwide.

6.      The Eagles have earned numerous accolades for their music including induction into the Rock and Roll Hall of Fame in their first year of eligibility and inclusion in *Rolling Stone*'s list of the 100 Greatest Artists of All Time.  The Eagles' album *Their Greatest Hits (1971–1975)* is the best-selling album of all time in the United States, with 38 million album units sold, while *Hotel California* is the third best-selling album, with 26 million album units sold.  In addition, the Eagles have won six GRAMMY® Awards and received Kennedy Center Honors in 2016.

7.      In 2013, the widespread fame and popularity of the Eagles led to the creation of a two-part documentary, titled *History of the Eagles*, which describes the history of the Eagles, their meteoric rise to success, and the profound influence they have had on rock & roll and the music industry.

8.      The Eagles' music retains an appeal that transcends both generation and genre, cementing the band's role as enduring musical icons and creating consistent demand for Eagles branded products.

9.      Products sold under the Eagles brand include apparel and other merchandise, such as key chains, guitar picks, and posters.

10.     Eagles branded products are distributed and sold to consumers throughout the United States, including in Illinois, through various affiliates and through the official eagles.com website.

11.     Plaintiff incorporates a variety of distinctive marks in the design of its various Eagles products.  As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks.  Plaintiff has also registered its trademarks with the United States Patent and Trademark Office.   The Eagles products often include at least one of Plaintiff's registered trademarks.  Often several of Plaintiff's marks are displayed on a single Eagles product.  Plaintiff uses its trademarks in connection with the marketing of the Eagles products, including the following marks which are collectively referred to as the "EAGLES Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 1,944,201 | EAGLES | For: Entertainment services provided by a musical group in the form of live performances in class 041. |
| 1,960,044 | EAGLES | For: Series of musical sound recordings in class 009. |
| 1,995,216 | EAGLES | For: Posters, songbooks, and concert tour books in class 016. |
| 2,161,179 | EAGLES | For: Clothing, namely, t-shirts, shorts, hats, visors, jerseys, sweatshirts, tank tops, jackets and caps relating to the music group "The Eagles" in class 025. |
| 5,472,692 | HOTEL CALIFORNIA | For: Key chains in class 014.<br><br>For: Guitar picks in class 015.<br><br>For: Posters in class 016.<br><br>For: T-shirts; sweatshirts; and bathrobes in class 025. |

4

| | | For: Playing cards in class 028. |
|---|---|---|
| 5,884,547 | HOTEL CALIFORNIA | For: Series of sound recordings featuring musical performances; digital media, namely, a series of downloadable sound recordings featuring musical performances in class 009. |

12.     The above U.S. registrations for the EAGLES Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The EAGLES Trademarks have been used exclusively and continuously by Plaintiff for many years, and have never been abandoned.  The registrations for the EAGLES Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the EAGLES Trademarks pursuant to 15 U.S.C. § 1057(b).  Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the EAGLES Trademarks included in the above table.

13.     The EAGLES Trademarks are exclusive to Plaintiff and are displayed extensively on Eagles products and in Plaintiff's marketing and promotional materials.  The Eagles brand has been extensively promoted and advertised at great expense.  In fact, over the years, Plaintiff, or third parties on Plaintiff's behalf, have expended millions of dollars in advertising, promoting and marketing featuring the EAGLES Trademarks.

14.     The EAGLES Trademarks are distinctive when applied to the Eagles products, signifying to the purchaser that the products come from the Eagles and are manufactured to Plaintiff's quality standards.  The EAGLES Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the EAGLES Trademarks is of incalculable and inestimable value to Plaintiff.

15.     For many years, Plaintiff has operated an e-commerce website where it promotes and sells genuine Eagles products at eagles.com.  The eagles.com website features proprietary content, images and designs exclusive to Plaintiff.

16.     Plaintiff's innovative marketing and product designs, combined with the immense popularity of the Eagles, have made the EAGLES Trademarks famous marks.  The widespread fame, outstanding reputation, and significant goodwill associated with the Eagles have made the EAGLES Trademarks invaluable assets of Plaintiff.

17.     Plaintiff, or third parties on Plaintiff's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the EAGLES Trademarks.  As a result, products bearing the EAGLES Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from the Eagles.  Eagles products have become among the most popular of their kind in the world.

**The Defendants**

18.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics

used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the Eagles brand has resulted in its significant counterfeiting. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

21.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the*

*Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

22. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

23. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Western Union, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish

such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the EAGLES Trademarks, and none of the Defendants are authorized retailers of genuine Eagles products.

24.     Many Defendants also deceive unknowing consumers by using the EAGLES Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for e-commerce stores relevant to consumer searches for Eagles products. Other e-commerce stores operating under Seller Aliases omit using the EAGLES Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Eagles products.

25.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

26.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

28. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29. Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts under this Court's jurisdiction to off-shore accounts to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from financial accounts to off-shore accounts outside the jurisdiction of this Court.

30. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and

severally, knowingly and willfully used and continue to use the EAGLES Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

31. Defendants' unauthorized use of the EAGLES Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered EAGLES Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The EAGLES Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Eagles products sold or marketed under the EAGLES Trademarks.

34. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the EAGLES Trademarks without Plaintiff's permission.

35. Plaintiff is the exclusive owner of the EAGLES Trademarks. Plaintiff's United States Registrations for the EAGLES Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the EAGLES Trademarks, and are willfully infringing and intentionally using counterfeits of the EAGLES

11

Trademarks. Defendants' willful, intentional and unauthorized use of the EAGLES Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

36.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known EAGLES Trademarks.

38.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with the Eagles or the origin, sponsorship, or approval of Defendants' Counterfeit Products by the Eagles.

41.     By using the EAGLES Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

42.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Eagles brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the EAGLES Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Eagles product or is not authorized by Plaintiff to be sold in connection with the EAGLES Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Eagles product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the EAGLES Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with the Eagles;

   d. further infringing the EAGLES Trademarks and damaging Plaintiff's goodwill; and

    e.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the EAGLES Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the EAGLES Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the EAGLES Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the EAGLES Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 20th day of July 2021.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Eagles, Ltd.*